```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :
                                      INDICTMENT
        -v.-                      :
                                      07 Cr.
VLADIMIR BARARUSHKIN,             :
TEA SANCHEZ,
    a/k/a "Tea Kalatozishvili,"   :
    a/k/a "Teka,"
TODD TOLSON,                      :
PABLO CRUZ, and
NANCY DIAZ                        :

        Defendants.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**07CRIM. 692**

*(JUDGE KARAS)*

*(USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: _____ DATE FILED: JUL 26 2007)*

COUNT ONE

The Grand Jury charges:

1.   From at least in or about November 2002, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, VLADIMIR BARARUSHKIN, TEA SANCHEZ, a/k/a "Tea Kalatozishvili," a/k/a "Teka," TODD TOLSON, PABLO CRUZ and NANCY DIAZ, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 8, United States Code, Section 1325(c).

2.   It was a part and an object of the conspiracy that VLADIMIR BARARUSHKIN, TEA SANCHEZ, a/k/a "Tea Kalatozishvili," a/k/a "Teka," TODD TOLSON, PABLO CRUZ and NANCY DIAZ, the defendants, and others known and unknown, unlawfully, willfully,

and knowingly, would and did enter into and cause others to enter into marriages for the purpose of evading the immigration laws, in violation of Title 8, United States Code, Section 1325(c).

Overt Acts

3. In furtherance of the conspiracy, and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about June 1, 2001, VLADIMIR BARARUSHKIN, the defendant, leased an office suite on the 18th Floor of a building located at 299 Broadway in New York, New York.

b. On or about January 1, 2002, BARARUSHKIN also leased a second office suite, adjacent to the suite referenced above in paragraph (a), located on the 18th Floor of 299 Broadway in New York, New York.

c. In or about the Fall of 2002, BARARUSHKIN approached a foreign national from Romania ("CC-1") in New York, New York, and offered to arrange a fraudulent marriage between CC-1 and a United States citizen, so that CC-1 could apply for permanent resident status. BARARUSHKIN told CC-1 that the entire process would cost approximately $15,000.

d. In or about late 2002, in Brooklyn, New York, BARARUSHKIN approached a foreign national from the Ukraine ("CC-2"), and offered to arrange a fraudulent marriage between CC-2

2

and a United States citizen, so that CC-2 could apply for permanent resident status.

   e. In or about January 2003, TEA SANCHEZ, a/k/a "Tea Kalatozishvili," a/k/a "Teka," the defendant, introduced CC-2 to a United States citizen ("USC-1") at an office located on the 18th floor of 299 Broadway, New York, New York, for the purpose of arranging a fraudulent marriage between CC-2 and USC-1.

   f. In or about January 2003, SANCHEZ prepared a draft marriage license application, in New York, New York, for CC-2 and USC-1 to use when they completed the same application at City Hall, in New York, New York.

   g. In or about January 2003, in New York, New York, BARARUSHKIN instructed CC-2 and USC-1 to open a joint bank account together, and take photographs together, in order to make it appear that their marriage was genuine.

   h. In or about February 2003, a co-conspirator not named herein brought a United States citizen ("CC-3") to an office on the 18th Floor of 299 Broadway, in New York, New York, and introduced CC-3 to TODD TOLSON and PABLO CRUZ, the defendants.

   i. In or about February 2003, in New York, New York, CRUZ explained to CC-3 that he would receive $5,000 if he married a Russian woman for immigration purposes, and then

3

divorced after nine months. CRUZ told CC-3 that he would receive $1,000 for getting married, $3,000 for participating in the immigration interview, and an additional $1,000 for the divorce.

   j. In or about February 2003, in New York, New York, CRUZ, BARARUSHKIN and SANCHEZ introduced CC-3 to a woman from Russia ("RUS-1") for the purpose of arranging a fraudulent marriage between CC-3 and RUS-1.

   k. In or about February 2003, after CC-3 and RUS-1 were married, in or about February 2003, CRUZ paid CC-3 approximately $1,000, in New York, New York.

   l. In or about February 2003, in New York, New York, CRUZ told CC-3 to change the address on his driver's license, and to open a joint bank account, in order to make it appear that the marriage was legitimate. In the same meeting, CRUZ also instructed CC-3 and RUS-1 to meet with each other every now and then so that they could get to know each other and learn information necessary for the immigration interview.

   m. In or about December 2003, BARARUSHKIN introduced CC-1 to a United States Citizen ("USC-2") at an office located on the 18th floor of 299 Broadway, in New York, New York, for the purpose of arranging a fraudulent marriage between CC-1 and USC-2.

   n. In or about December 2003, in New York, New York, CC-1 paid BARARUSHKIN approximately $8,000 for arranging a

4

fraudulent marriage between CC-1 and USC-2.

   o. In or about December 2003, in New York, New York, BARARUSHKIN instructed CC-1 and USC-2 to arrange for telephone and other utility bills in both of their names at the same address, and to open a joint bank account, so that it would appear that their marriage was genuine.

   p. In or about July 2005 and August 2005, CRUZ and TOLSON helped CC-2 and USC-1 prepare for their immigration interview by meeting with them and asking mock interview questions in New York, New York.

   q. In or about January 2006, in New York, New York, TOLSON helped CC-1 and USC-2 prepare for their immigration interview by meeting with them, asking mock interview questions, and preparing a photo album.

   r. In or about January 2006, on the day before the immigration interview referenced in paragraph (q), CC-1 paid TOLSON approximately $5,000, in New York, New York.

   s. In or about January 2006, a foreign national from Romania ("CC-4") was introduced to TOLSON at an office located on the 18th Floor of 299 Broadway in New York, New York. At the meeting, TOLSON agreed to arrange a fraudulent marriage for CC-4 to a United States citizen spouse, so that CC-4 could apply for permanent resident status.

   t. In or about January 2006, in New York, New

York, TOLSON introduced CC-4 to a United States citizen ("USC-3") for the purpose of arranging a fraudulent marriage between CC-4 and USC-3.

   u.   In or about January 2006, following CC-4's marriage to USC-3, CC-4 paid TOLSON approximately $7,000, in New York, New York.

   v.   In or about January 2006, following CC-4's marriage to USC-3, NANCY DIAZ, the defendant, took photographs of CC-4 and USC-3 together in New York, New York.

   w.   In or about February 2006, CC-4 met with SANCHEZ at the office at 299 Broadway, New York, New York. At the meeting, SANCHEZ collected information from CC-4 in order to prepare immigration applications on his behalf.

   x.   In or about early 2006, a foreign national from Romania ("CC-5") was introduced to TOLSON at an office located on the 18th Floor of 299 Broadway, New York, New York. At that meeting, TOLSON agreed to arrange a fraudulent marriage for CC-5 to a United States citizen spouse, so that CC-5 could apply for permanent resident status.

   y.   In or about early 2006, in New York, New York, TOLSON introduced CC-5 to a United States citizen ("USC-4") for the purpose of arranging a fraudulent marriage between CC-5 and USC-4.

   z.   In or about early 2006, following the

marriage between CC-5 and USC-4, CC-5 paid TOLSON approximately $6,000, in New York, New York.

    aa. On or about July 29, 2006, BARARUSHKIN met with CC-2 in Brooklyn, New York, and discussed the preparation and filing of a Form I-360, falsely claiming that she was abused by USC-1, so that CC-2 could obtain permanent resident status following the dissolution of the marriage between CC-2 and USC-1.

    bb. On or about October 5, 2006, TOLSON leased an office suite on the 11th Floor of a building located at 350 Broadway in New York, New York.

    cc. In or about November 2006, CC-4 discussed the status of his permanent resident application with DIAZ at an office located on the 11th Floor of 350 Broadway, New York, New York.

    dd. On or about March 3, 2007, BARARUSHKIN met with CC-2 in Brooklyn, New York, and offered to prepare three fraudulent letters in support of CC-2's I-360 petition in exchange for $150.

    ee. In or about April 2007, CC-4 discussed the status of his permanent resident application and immigration interview with DIAZ at an office located on the 11th Floor of 350 Broadway, New York, New York, including the fact that CC-4 could not locate his spouse, USC-3, and had not seen or spoken to USC-3 since in or about December of 2006.

ff.  In or about the Summer of 2007, CC-1 discussed the status of his permanent resident application with DIAZ at an office located on the 11th Floor of 350 Broadway, New York, New York.

(Title 18, United States Code, Section 371.)

COUNT TWO

The Grand Jury further charges:

4.  From at least in or about November 2002, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, VLADIMIR BARARUSHKIN, TEA SANCHEZ, a/k/a "Tea Kalatozishvili," a/k/a "Teka," TODD TOLSON, PABLO CRUZ and NANCY DIAZ, the defendants, unlawfully, willfully, and knowingly did aid, abet, counsel, command and induce others to enter into marriages for the purpose of evading the immigration laws, to wit, BARARUSHKIN, SANCHEZ, TOLSON, CRUZ and DIAZ arranged sham marriages between United States citizens to whom they paid money, and foreign citizens from whom they collected money, for the purpose of obtaining lawful permanent resident status for the foreign citizens.

(Title 8, United States Code, Section 1325(c) and
   Title 18, United States Code, Section 2.)

_____          _____
Foreperson                                MICHAEL J. GARCIA
                                          United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

VLADIMIR BARARUSHKIN,
TEA SANCHEZ, a/k/a "Tea Kalatozishvili,"
a/k/a "Teka,"
TODD TOLSON,
PABLO CRUZ, and
NANCY DIAZ,

Defendants.

**INDICTMENT**

07 Cr.

(18 U.S.C. § 371, 8 U.S.C. § 1325(c)
and 18 U.S.C. § 2.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

_____ Foreperson.