**LAW OFFICES OF ELLYN BANK DUGOW, P.C.**
d/b/a **Ellyn I. Bank**
**Attorney At Law**
225 Broadway, Suite 715
New York, New York 10007

212-385-1800
FAX 212-566-8165

September 10, 2008

**Via ECF & First Class Mail (Courtesy Copy)**

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *US v. Bararushkin*, 07 Cr 692 (RJS)

Dear Judge Sullivan:

I write in reference to the sentencing of Vladimir Bararushkin, which is scheduled for September 19, 2008, at 9:30 a.m. I respectfully request that the court impose as lenient a sentence as possible based on a combination of factors including, but not limited to: the fact that Mr. Bararushkin is 57 years old, his substantial work history and education, his acceptance of responsibility, his ability to be rehabilitated, his limited criminal history prior to his arrest in this case, and in addition, Mr. Bararushkin has been helping other inmates at the MDC to have a more positive attitude, raise their self esteem, and be more productive by teaching them the game of chess. (See character letters of inmates). Therefore, there are many reasons that warrant leniency in his sentencing.

## I. VLADIMIR BARARUSHKIN'S BACKGROUND

### A. Family Background

Mr. Bararushkin was born on May 7, 1951, in Roslavl, Russia. He was the only child of Alexandrovich Bararushkin and Antonina Ivankova, who separated when Mr. Bararushkin was

only a toddler. His mother died at the age of 82 in Raslavl, and he has not had contact with his father since the separation.

Mr. Bararushkin was raised by his mother and stepfather, Fyodor Osibenkov Vyacheslav. His mother married Fyodor shortly after her separation from Mr. Bararushkin's biological father. Mr. Bararushkin's stepfather passed away at the age of 74. Mr. Bararushkin has one maternal half brother, Osibenkov Vyacheslav, 50, who resides in Roslavl. Until his arrest, Mr. Bararushkin financially supported Osibenkov because he has had a lifelong struggle with alcohol addiction and is in treatment.

Mr. Bararushkin had a positive upbringing, experiencing no significant problems or financial difficulties during childhood.

In 1983, Mr. Bararushkin met and married Vasilieva Pobedina Dubrowski ("Maria Dubrowski") in Smolenski, Russia. Maria was a US citizen and, in 1995, the couple moved to the United States. Mr. Bararushkin legally immigrated and received permanent residency based on Maria's sponsorship with immigration officials. On April 18, 2000, Mr. Bararushkin became a naturalized U.S. citizen.

The couple had one biological son: Alexei Bararushkin, 24, who lives in Brooklyn. Mr. Bararushkin adopted Maria's son from a previous marriage, Yuri Bararushkin, 34, who lives in St. Petersburg, Russia.

On May 3, 2000, Mr. Bararushkin and Maria were granted a divorce. Sadly, Maria died on July 8, 2006, at the age of 51, from stomach cancer.

In 2000, Mr. Bararushkin met Albina Silutina, now 47, in Roslavl. The couple married in 2001. The couple had no children and on November 27, 2006, they were granted a divorce.

**B. Personal Background**

**1. Education**

Mr. Bararushkin graduated from Roslavl High School No. 6 in 1968 and went on to Bryansk State Technical University from 1968 to 1973 where he earned a combined bachelor and master's degree in mechanical engineering. From 1974 to 1980 he attended Moscow Pedagogical College of Foreign Language in Moscow, Russia, where he earned a bachelor's degree in English and Spanish. From 1999 to 2000, Mr. Bararushkin completed a paralegal studies program at Queens College, Continuing Education Program. He received his paralegal certificate in May 2000, and has over five years of paralegal experience.

Mr. Bararushkin speaks several languages. He is fluent in Russian, Ukrainian, and English, with a working knowledge of Spanish, and he can read and write in German.

**2. Business Background**

While in Russia, Mr. Bararushkin worked as a mechanical engineer and designer at the Research Institute in Slomensk. He has also received two patents in the U.S. in the field of mechanical engineering.

In 1996, after moving to the United States, Mr. Bararushkin started V.B. Tantal, a company which focused on paralegal services and language translations. He owned and operated this company until February 2005. From June 2004 until the instant arrest, Mr. Bararushkin owned ARC Global Corporation, which filed patents and provided language translation services.

**3. Mental/Physical Health**

Mr. Bararushkin is presently in good health. He does not have any mental or emotional issues, and has not had any drug related problems. He has had a problem with alcohol. His only

prior offense was a DWI-related arrest in May 1998. After the arrest, Mr. Bararushkin attended a 10-week outpatient, alcohol-treatment program, and he has not consumed alcohol since.

## II. OFFENSE CONDUCT

Mr. Bararushkin was arrested on July 31, 2007, and has been in custody since then. He was charged in a two-count indictment with (Count 1) conspiracy to enter into and cause others to enter into marriages for the purposes of evading the immigration laws and (Count 2) arranging sham marriages between US citizens for purpose of obtaining lawful permanent resident status for foreign citizens, in violation of 18 USC § 1325(c).

On April 30, 2008, Mr. Bararushkin pled guilty to Count 1, pursuant to a plea agreement, before Your Honor.

The Presentence Report (PSR) that was issued by the United States Probation Department on August 14, 2008, calculates Mr. Bararushkin's advisory guidelines, based on 2008 edition of the guidelines, as follows:

1. The base offense level is 11, pursuant to §2L2.1(a).

2. The offense level is increased by 6 points because the offense involved the arrangement of between 25 and 99 fraudulent marriages, pursuant to §2L2.1(b)(2)(B).

3. The offense level is increased by 2 points because Mr. Bararushkin was regarded as a supervisor or manager within the overall conspiracy, pursuant to §3B1.1(c).

4. The offense level is decreased by 3 points because of Mr. Bararushkin's timely notification of his intention to plead guilty and the fact that he has shown recognition of responsibility for the offense, pursuant to §3E1.1(a) and (b).

5. Accordingly, the total offense level is 16.

6. Mr. Bararushkin has one prior criminal conviction and, therefore, is in a criminal history category (CHC) of I.

7. Based on a CHC of I and a total offense level of 16, the guideline range for imprisonment is 21 to 27 months.

### III.  REASONS TO IMPOSE A SENTENCE AS LENIENT AS POSSIBLE:

**A. The Court does not have to find "extraordinary circumstances" to sentence a defendant outside the advisory guidelines.** *Gall v. United States*, 552 U.S. __, 2007 U.S. LEXIS 13083, *14 (Dec. 10, 2007)*.

After *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court must impose a sentence that is sufficient, but not greater than necessary, to effectuate the statutory purposes and facts set forth in § 3553(a). A sentencing court must both "consider Guidelines ranges" and "tailor the sentence in light of other statutory concerns as well." 543 U.S. at 245-26. In the words of the Second Circuit: "with the mandatory duty to apply the Guidelines excised, the duty imposed by §3553(a) acquires renewed significance." *United States v. Crosby*, 397 F.3d 103, 111 (2d Cir. 205).

The Supreme Court's recent sentencing decisions make it clear that any attempt to give special weight to the Sentencing Guidelines is contrary to its holding in *Booker*, which made it clear that the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are reasonable. *Gall v. United States*, 552 U.S. __, 2007 U.S. LEXIS 13083, *14 (Dec. 10, 2007); See also *Kimbrough v. United States*, 552 U.S. __, 2007 US LEXIS 13082,*___ (Dec. 10, 2007); *Rita v. United States*, 551 U.S. ___, 127 S. Ct. 2456, 2465 (2007). In reviewing the reasonableness of a sentence outside the Guidelines range, the Court in *Gall* held that:

> Appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

2007 U.S. LEXIS 13083, *16.

As explained in *Rita* and again in *Gall*, a district court should begin by correctly calculating the applicable Guidelines range. 551 U.S. at __, 127 S.Ct. at 2480; 552 U.S. at __, 2007 U.S. LEXIS 13083, *20. The district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guidelines range is reasonable. *Id.* at __, 2007 U.S. LEXIS 13083, *21.

Accordingly the Court in *Gall* held:

> He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

*Id.* at __, 2007 U.S. LEXIS 13083, *21.

**B. Mr. Bararushkin is 57 years old, his work history, and his ability to be rehabilitated.**

Mr. Bararushkin is 57 years old, and as a result being incarcerated is more difficult for him than most inmates who are much younger.

Prior to the arrest for the instant offense, he had only one criminal conviction for a DWI. He does not dispute the seriousness of a DWI, however, he took steps to rehabilitate himself so that he would not repeat those actions. After that conviction, Mr. Bararushkin attended a 10-week, outpatient, alcohol-treatment program. Until his arrest in the instant offense, he has had no further problems with alcoholism or driving while intoxicated.

Clearly, Mr. Bararushkin has been dedicated to making a better life for himself and his family through education, hard work, immigrating to this country and becoming a United States citizen in 2000. Despite the hardships of moving to a new country, he was able to use his education and start up a successful business.

He did make a mistake in this instant offense, which he has acknowledged, but his strong work history shows his ability to be rehabilitated and become a productive member of society again.

**D. Need to Afford Adequate Deterrence to Criminal Conduct**

Mr. Bararushkin has learned from his mistakes and will not engage in this behavior again. Because he was incarcerated, his home is now in the foreclosure process. He is eager to complete his sentence and return to his community, family and friends.

**E. Mr. Bararushkin is a chess teacher in the MDC, which has helped many inmates be more productive and have a positive attitude.**

Mr. Bararushkin's talent as a chess player appears to be well known in the MDC. Mr. Bararushkin has been teaching chess to some of the other inmates in the MDC who are very grateful. (See character letters from fellow inmates).

Although chess is a game, it is also a very positive tool in life. It teaches people how to think logically and to solve problems. In addition, if someone is good at the game it can enhance their self-esteem, a quality many inmates are lacking and which will help them to lead more productive lives when they are released from custody.

**F. Mr. Bararushkin's Support Network**

Mr. Bararushkin has the love and support of his family, friends and his community. Mr. Bararushkin is closest to his son Alexei, who was impacted the most by his father's arrest. Alexei

followed in his father's footsteps and sought a higher education after graduating high school. He attended both the Globe Institute of Technology and Kingsborough College. Though he did not receive a degree from these schools, he went on to become a licensed computer technician. However, he is currently unemployed. Alexei has had his father's support throughout his own personal battle with substance-abuse, and relied on his father when he was going through his legal troubles. Alexei hopes his father is shown leniency so that he may return home and begin to rebuild his life as soon as possible.

Mr. Bararushkin has the emotional supported of his half brother Osipenkov Vyacheslav, who, prior to his arrest, Mr. Bararushkin financially supported. Osipenkov has been undergoing an alcohol treatment and has not been able to find work due to his alcohol addiction (and age).

Mr. Bararushkin is very involved in his community. Friends consider him an "honest, hard working, friendly, and a very intelligent man." (See Irina Balan's character letter). They consider him to be a loyal and trustworthy and have come to rely on him in the community. (See Tobias Gold's character letter). They also recognize the bond Mr. Bararushkin has with Alexei and the kind of father he is to him. (See character letters). Those closest to Mr. Bararushkin are willing to do whatever they can to help him rebuild his life.

### VII.  CONCLUSION

For the foregoing reasons, I respectfully request as lenient a sentence as possible.

Respectfully submitted,<br>
/s/<br>
Ellyn I. Bank

cc:     AUSA Jenna Dabbs (212) 637-2937